WILLARD G. NASH *vs.* COMMONWEALTH & others.

Suffolk.    December 8, 1898. — October 19, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Claim for Materials furnished Contractor for Construction of Metropolitan Aqueduct — Equitable Lien — Trust — Commonwealth as Party to Suit — Statute.*

A claim for materials furnished to a contractor for the construction, partly under ground and partly upon embankments, of a large closed aqueduct of masonry about a mile long and a part of the metropolitan water system, and actually used in such construction, is within Pub. Sts. c. 16, § 64.

An article in a contract made with the Metropolitan Water Board for the construction of an aqueduct, provided that " the Commonwealth may keep any moneys which would otherwise be payable hereunder, and apply the same to the payment of . . . all claims for labor or materials for the work, notice of which, signed and sworn to by the claimants, shall have been filed in the office of the board, or may . . . apply such moneys thereto." The petition of a person who had furnished materials to the contractor averred that the Commonwealth, by virtue of this and other articles, had retained large sums of money due on account of the contract for the payment of such claims as had been filed under this article, and still held the same. *Held,* that it must be taken that the Commonwealth had money in its hands which Pub. Sts. c. 16, § 64, intended should be security for the payment of the petitioner's bill, and that the money came to the Commonwealth for that purpose, and was held by it as trustee for him.

Under St. 1887, c. 246, the Commonwealth may be made a party to a petition in equity, brought in the Superior Court by a person who has furnished materials to a contractor for the construction of an aqueduct as a part of the metropolitan water system, for the purpose of satisfying the petitioner's claim out of moneys due from the Commonwealth to the contractor.

PETITION in equity, filed December 30, 1897, in the Superior Court, against the Commonwealth, S. Casparis, and George H. Smith and Theron H. Burden, copartners as Smith and Burden, to enforce payment of a claim for materials furnished by the petitioner to Smith and Burden, contractors under Casparis, who had a contract with the Metropolitan Water Board for the construction of an aqueduct as a part of the metropolitan water system. The Commonwealth and Casparis demurred to the petition. At the hearing a decree was entered sustaining the demurrers and dismissing the petition; and the petitioner appealed to this court. The facts appear in the opinion.

The case was argued at the bar in December, 1898, and afterwards was submitted on briefs to all the justices.

*F. C. Nash* & *F. H. Nash,* for the petitioner.

*A. E. Pillsbury* & *G. M. Palmer,* for Casparis.

The Commonwealth did not appear in this case and filed no brief.

HAMMOND, J. The petitioner says that he furnished certain materials to Smith and Burden, contractors for the construction of an aqueduct for the Commonwealth; that he has not been paid therefor, but that the Commonwealth, by agreement with the contractor, and in accordance with Pub. Sts. c. 16, § 64, has retained in its possession a certain portion of the contract money for the payment of his and similar claims; and he seeks by this proceeding to have his claim paid out of that fund.

The demurrers were for want of jurisdiction as against the Commonwealth, and for want of equity.

The first question is whether the petitioner's claim is within Pub. Sts. c. 16, § 64. We think that it is. It appears from this contract between Smith and Burden and the Commonwealth, that the aqueduct to be built was a large closed aqueduct of masonry, about a mile long, in this State, and a part of the metropolitan water system. It was to be built partly under ground and partly upon embankments. We can have no doubt that such an aqueduct was a structure within the meaning of Pub. Sts. c. 191, § 1, and that if it belonged to a private individual a lien for labor performed and furnished, and for materials furnished and actually used in its construction, could have been established. St. 1851, c. 343, § 1. *Truesdell* v. *Gay,* 13 Gray, 311. St. 1855, c. 431. See also *Beatty* v. *Parker,* 141 Mass. 523.

The petition sufficiently sets forth that a large part of the materials furnished by the petitioner to Smith and Burden was actually used in the construction of the aqueduct.

The next question is whether there is in the custody of the Commonwealth any money which it retains in compliance with the statute. It was the duty of the officers acting for the Commonwealth to " obtain sufficient security, by bond or otherwise, for payment by the contractor and by all sub-contractors for all labor performed or furnished, and for all materials used in such construction " of the work.

Article 19 of the contract, so far as material, is as follows: " The Commonwealth may keep any moneys which would otherwise be payable hereunder, and apply the same to the payment of . . . all claims for labor or materials for the work, notice of which, signed and sworn to by the claimants, shall have been filed in the office of the board, or may . . . apply such moneys thereto."

There can be no doubt that this article is inserted in the contract for the purpose of complying with Pub. Sts. c. 16, § 64.

The petitioner avers upon information and belief that the Commonwealth, by virtue of this and other articles, has kept back and retained large sums of money due on account of said contract for the payment of such claims as have been filed under Article 19, and now holds the same. From the allegations of the petition, therefore, it must be taken that the Commonwealth has money in its hands which the law intends shall be security for the payment of the petitioner's bill, and that the money came to the Commonwealth for that purpose.

It is objected by the respondent, Casparis, that even if the money was so held by a private individual, the petitioner could not avail himself of it by any proceeding, either at law or in equity, for want of privity of contract; and he relies in support of this proposition upon the familiar general rule that a stranger to a contract cannot sue, either at law or in equity, upon a promise made therein for his benefit, citing *Ball* v. *Newton,* 7 Cush. 599; *Mellen* v. *Whipple,* 1 Gray, 317; *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381; *Marston* v. *Bigelow,* 150 Mass. 45, and several other similar cases. The rule is well established in this Commonwealth, but there are certain exceptions to it which are clearly stated in *Mellen* v. *Whipple,* 1 Gray, 317. In this case, however, the rule is not applicable. The case does not rest alone upon the provision in the contract, but upon that provision taken in connection with the statute. Under the provisions of law made for the petitioner's benefit, the Commonwealth now has money which it holds as security for the payment of his claim. It holds the money as trustee for the petitioner, not simply by virtue of Article 19 of the contract. The purpose of the statute was to secure the petitioner's claim, and the Commonwealth

having retained a fund for the materialmen in compliance with the statute is under an implied obligation to hold it for that purpose, and there is no doubt that a private party so situated could be held answerable in equity for the proper disposition of the fund. *Merchants & Traders' National Bank* v. *New York*, 97 N. Y. 355.

The only remaining question is whether the Commonwealth can be made a party to this suit. Of course the Commonwealth cannot be impleaded in its own courts except by its own consent, clearly manifested by act of the Legislature. *Troy & Greenfield Railroad* v. *Commonwealth*, 127 Mass. 43. Acting under this rule of interpretation, this court decided that Pub. Sts. c. 195, § 1, giving jurisdiction to the Superior Court of all "claims against the Commonwealth which are founded on a contract for the payment of money" did not extend to a breach of a contract to do something else than the payment of money, (*Wesson* v. *Commonwealth*, 144 Mass. 60,) nor to the obligation imposed by statute to reimburse the expense incurred by a town in support of a State pauper. *Milford* v. *Commonwealth*, 144 Mass. 64.

Shortly after these decisions, and, it reasonably may be inferred, in consequence of them, St. 1887, c. 246, was passed. It provides that the Superior Court "shall have jurisdiction of all claims against the Commonwealth, whether at law or in equity," with certain exceptions not here material, "and all claims shall be subject to the same set-off and recoupment as they would be if the Commonwealth was a private person, and shall be enforced in accordance with the provisions of chapter one hundred and ninety-five of the Public Statutes." While the language of this statute is full and comprehensive, it is not to be interpreted as imposing any new obligation upon the Commonwealth, or as creating a new class of claims for which a sovereignty never has been held responsible, but, as remarked by Devens, J., in *Murdock Parlor Grate Co.* v. *Commonwealth*, 152 Mass. 28, 31, "to provide a convenient tribunal for the determination of claims of the character which civilized governments have always recognized, although the satisfaction of them has been usually sought by direct appeal to the sovereign, or, in our system of government, through the Legislature."

Pub. Sts. c. 195, § 1, provides that the petition shall contain a clear and brief statement of the claim and of the damages demanded. Section 3 provides that "the cause shall be tried in the same manner in all respects as a suit at common law." Section 4 provides that "if the final decision is in favor of the claimant, the Chief Justice of the Superior Court shall certify to the Governor the amount found due, with the legal costs; and the Governor shall draw his warrant for such amount on the treasurer and receiver general, who shall pay the same from any appropriations made for the purpose by the General Court."

The petitioner desires in substance to enforce an equitable lien upon the funds in the hands of the Commonwealth by proceeding against it as a trustee. He does not contend that there is any specific and distinct fund set apart for him alone. The whole fund is for various purposes, and is to be paid out to different persons. The trust cannot be enforced without summoning in all those interested in it and giving them an opportunity to appear; and in this way the whole complicated machinery provided by equity practice for the adjustment of the various claims in cases where they are or may be numerous must follow.

In view of all this the writer of this opinion, notwithstanding the comprehensive language of St. 1887, c. 246, is inclined to the view that the statute refers only to direct claims against the Commonwealth and not to a claim like this, and he is authorized to state that in this view Mr. Justice Lathrop concurs; but in the opinion of a majority of the court the language is comprehensive enough to indicate the intention of the Legislature that the courts shall have jurisdiction to enforce any claim "of the character which civilized governments have always recognized," or, in other words, that the effect of the statute is to make the Commonwealth answerable down to the judgment in its own courts for any just and legal claim against it, whether as trustee or otherwise, exactly as though it were a private individual; and that the language of the various sections of Pub. Sts. c. 195, describing the method of proceeding, must be held broad enough, when taken in connection with St. 1887, c. 246, to cover any proceeding necessary or proper to enforce such claim.

The decision of the court, therefore, is that the Commonwealth may be held as a party to this suit under St. 1887, c. 246.                                      *Demurrer overruled.*