SUPERIOR COURT 
 
 HAROLD BROTHERS MECHANICAL CONTRACTORS, INC. vs. TOWN OF BRAINTREE; SHAWMUT WOODWORKING AND SUPPLY, INC.[1], third-party defendant

 
 Docket:
 2021-00505
 
 
 Dates:
 December 16, 2021
 
 
 Present:
 Paul D. Wilson Justice of the Superior Court
 
 
 County:
 NORFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF’S MOTION FOR JUDGMENT ON THE PLEADINGS
 
 

             In July 2018, Defendant Town of Braintree (“Braintree”) entered into a construction contract with Third-Party Defendant Shawmut Design and Construction (“Shawmut”) for Shawmut to act as the general contractor on a project to renovate the Braintree East Middle School (the “Project”). Shawmut then subcontracted with Plaintiff Harold Brothers Mechanical Contractors, Inc. (“Harold Brothers”) to perform certain heating, ventilation, and air conditioning work on the Project. Shawmut made several payments to Harold Brothers under the subcontract, but Harold Brothers claims that after it completed its work on the Project, Shawmut refused to pay $393,201.00 it owed to Harold Brothers. Harold Brothers then demanded payment from Braintree pursuant to M.G.L. c. 30, § 39F.  Braintree failed to remit payment in the time specified by the statute, and this lawsuit ensued.
            The Complaint consists of one count, claiming that Braintree failed to comply with M.G.L. c. 30, § 39F and seeking payment of the balance due under the subcontract. Harold
 
-------------------------------------
 
            [1] d/b/a Shawmut Design and Construction
 
                                                            -1-
 
Brothers has moved for judgment on the pleadings, which Braintree and Shawmut oppose.[2] I heard argument on November 3, 2021. For the reasons set out below, I will allow Harold Brothers’ motion.
Analysis
            Under Massachusetts Rule of Civil Procedure 12(c), any party may move for judgment on the pleadings after the pleadings are closed. Mass. R. Civ. P. 12(c). A court may issue judgment on the pleadings only when the text of the pleadings produces no dispute about material facts. Clarke v. Metropolitan Dist. Comm’n, 11 Mass. App. Ct. 955, 955 (1981). “In deciding a rule 12(c) motion, all facts pleaded by the nonmoving party must be accepted as true.” Jarosz v. Palmer, 436 Mass. 526, 529-530 (2002), citing Minaya v. Massachusetts Credit Union Share Ins. Corp., 392 Mass. 904, 905 (1984). Judgment on the pleadings is not appropriate if the non-moving party pleads by denial or by an affirmative defense that puts in question a material allegation of the complaint. Tanner v. Board of App. of Belmont, 27 Mass. App. Ct. 1181, 1182 (1989). In presenting a Rule 12(c) motion, the moving party is deemed to have admitted as true the opposing party’s assertions of fact. Minaya, 392 Mass. at 905.
            The test for Rule 12(b)(6) motions governs a motion brought under Mass. R. Civ. P. 12(c). See Welch v. Sudbury Youth Soccer Assoc., 453 Mass. 352, 353 (2009). Accordingly, “the court may consider documents referenced in the plaintiff’s complaint without converting the motion to dismiss into a motion for summary judgment.” Johnston v. Box, 453 Mass. 569, 581-582 n. 19 (2009) (citation omitted); see Mullins v. Corcoran, 488 Mass. 275 (2021).
            Harold Brothers asserts that it is entitled to judgment on the pleadings because the facts established in the pleadings show that Braintree has failed to comply with M.G.L. c. 30, § 39F.
 
-------------------------------------
 
[2] The sole argument in Shawmut’s Opposition is also made by Braintree in its Opposition. Therefore, while I have not specifically noted Shawmut’s Opposition, I have addressed it in this decision.
 
                                                            -2-
 
Section 39F permits subcontractors to obtain direct payment from the awarding governmental authority, if the general contractor does not pay them promptly. Its purpose “is to ensure prompt payment to subcontractors on public works projects.” See E. Amanti & Sons, Inc. v. Triton Reg’l Sch. Dist., 14 Mass. L. Rptr. 3, 4 (Mass. Super. 2001) (Lowy, J).
            The statutory language of “Section 39F . . . is not unusually complicated.” American Manufacturers Mut. Ins. Co. v. N. Brookfield, 2006 WL 8458636, at *9 (D. Mass. 2006). If a subcontractor has “substantially completed” work and has not received from the general contractor “the balance due under the subcontract including any amount due for extra labor and materials furnished to the general contractor, less any amount retained by the awarding authority as the estimated cost of completing the incomplete and unsatisfactory items of work, the subcontractor may demand direct payment of that balance from the awarding authority.” M.G.L. c. 30, § 39F(d). Section 39F(d) requires that the demand “be by a sworn statement delivered to or sent by certified mail to the awarding authority,” with a copy also delivered to or sent by certified mail to the general contractor. “The demand shall contain a detailed breakdown of the balance due under the subcontract and also a statement of the status of completion of the subcontract work.” Id.
            Sections 39F(d) and (e) set forth the timing requirements for the response to the demand. Specifically, they provide:
(d) . . . Within ten days after the subcontractor has delivered or so mailed the demand to the awarding authority and delivered or so mailed a copy to the general contractor, the general contractor may reply to the demand. The reply shall be by a sworn statement delivered to or sent by certified mail to the awarding authority and a copy shall be delivered to or sent by certified mail to the subcontractor at the same time. The reply shall contain a detailed breakdown of the balance due under the subcontract including any amount due for extra labor and materials furnished to the general
 
                                                            -3-
 
contractor and of the amount due for each claim made by the general contractor against the subcontractor.
(e) Within fifteen days after receipt of the demand by the awarding authority, but in no event prior to the seventieth day after substantial completion of the subcontract work, the awarding authority shall make direct payment to the subcontractor of the balance due under the subcontract including any amount due for extra labor and materials furnished to the general contractor, less any amount (i) retained by the awarding authority as the estimated cost of completing the incomplete or unsatisfactory items of work,
. . . or (iii) disputed by the general contractor in the sworn reply; provided, that the awarding authority shall not deduct from a direct payment any amount as provided in part (iii) if the reply is not sworn to, or for which the sworn reply does not contain the detailed breakdown required by subparagraph (d). . . .
            The undisputed facts, alleged in the Complaint and confirmed by Braintree and Shawmut in their written oppositions and at oral argument, establish that on April 20, 2021, Braintree’s Mayor received a certified letter from Harold Brothers demanding direct payment under M.G.L. c. 30, § 39F(d). The letter contained a sworn statement noting what “applications for payment” Harold Brothers had and had not received, identified a change order for which it was unpaid, and explained how Harold Brothers arrived at the claimed amount of $393,201.00. It further stated that Harold Brothers had completed “100% of the work under the contract.” See Complaint at Exh. 1. Harold Brothers sent a copy of the letter by certified mail to Shawmut, which it received on April 19, 2021. Shawmut did not send a sworn reply statement within ten days of receiving the letter, and Braintree did not make a direct payment by May 5, 2021, fifteen days after receipt of the demand.
            On May 7, 2021, Harold Brothers sent Braintree’s counsel an email stating that it intended to file suit if it did not receive the payment. Thereafter, on May 12, 2021, Harold Brothers received an email from Shawmut that, according to Harold Brothers, “fraudulently attempted to deduct a ‘back charge’ for work done on the auditorium ceiling from amounts owed
 
                                                            -4-
 
to Harold Brothers.” Complaint at ¶ 21. On May 28, 2021, Harold Brothers filed this lawsuit against Braintree. Braintree’s Answer asserts that on May 28, 2021, it delivered a check payable to Harold Brothers in the amount of $226,270.00. It deducted $166,931.00, which was the “subject of an ongoing dispute between the parties and will therefore be deposited into an interest-bearing joint account” in the names of both parties. See Braintree’s Answer at ¶ 22.
            These agreed upon facts establish that Braintree failed to comply with M.G.L. c. 30, § 39F. Section 39F(e) plainly requires that “[w]ithin fifteen days after receipt of the demand . . . the awarding authority shall make direct payment to the subcontractor of the balance due under the subcontract . . . less any amount (i) retained by the awarding authority as the estimated cost of completing the incomplete or unsatisfactory items of work, . . . or (iii) disputed by the general contractor in the sworn reply” (emphasis added). Braintree received the demand on April 20, 2021 and failed to remit any payment “[w]ithin fifteen days after receipt of the demand” as required by the statute.
            Braintree argues that it did not have to remit any payment within fifteen days of the demand because “[Harold Brothers’] Demand did not include a detailed breakdown, as required” by Section 39F(d). See Braintree’s Opposition at 5. Specifically, Braintree contends that the demand “conspicuously omitt[ed] the back charge that was the subject of a dispute between Harold Brothers and Shawmut.” Id. at 6.  Beyond the “omitt[ed] back charge,” Braintree does not allege any other way the “detailed breakdown” was deficient.[3]
 
-------------------------------------
 
[3] At the hearing on the motion, Braintree acknowledged that the demand letter, which explained how Harold Brothers arrived at the claimed amount and included specific references to certain dated applications for payment and a specific change order, otherwise complied with the “detailed breakdown” required by the statute. Cf. Ostow Elec. Co. v. City of Leominster, 1999 WL 230910, at *2 (Mass. Super. 1999) (Toomey, J.) (dispute of fact whether plaintiff’s demand constituted a “detailed breakdown” because it requested payment for “extra work” and an “unspecified ‘change order.’”
 
                                                            -5-
 
            Braintree’s argument has no merit. The statute requires that the subcontractor, here Harold Brothers, submit to the awarding authority “a detailed breakdown of the balance due under the subcontract.” M.G.L. c. 30, § 39F(d). Because the demand is from the perspective of the subcontractor, the statute then permits the contractor to submit a reply with its own “detailed breakdown of the balance due under the subcontract including . . . the amount due for each claim made by the general contractor against the subcontractor.” Id. From Harold Brothers’ perspective, it was owed the full amount due on the subcontract, and so that is what it requested. The back charge, which was an amount that Shawmut claimed it was owed by Harold Brothers for deficient work, should and could have been raised by Shawmut in a timely response under Section 39F(d). See Revoli Const. Co. v. Andover, 10 Mass. L. Rptr. 688, 689 (Mass. Super. 1999) (Gershengorn, J.) (noting that contractor’s response under Section 29F(d) alleged large back pay charges against subcontractor). Harold Brothers, however, was under no obligation to include Shawmut’s claim for a back charge in its demand or to anticipate that Shawmut would fail to respond to its demand in the time allotted under the statute. Accordingly, there is no material dispute regarding whether the demand was proper and thus, whether Braintree was required to act upon the demand. See Pioneer Steel Erectors, Inc. v. Commonwealth, 344 Mass. 195, 198 (1962) (where the demand is proper, the awarding authority is obligated to pay the subcontractor).
            Alternatively, Braintree argues that if I conclude the demand was proper, I should also conclude that Braintree has complied with M.G.L. c. 30, § 39F because the statute “required [Braintree] to take Shawmut’s Reply into account when determining the balance due to Harold Brothers under the subcontract,” and Braintree did issue a payment to Harold Brothers, less the disputed amount, after it received Shawmut’s reply. Braintree’s Opposition at 6. According to
 
                                                            -6-
 
Braintree, Section 39F(e) only expressly precludes awarding authorities from deducting amounts “where the general contractor’s reply is not sworn to or the sworn reply does not contain a detailed breakdown. Noticeably absent is language requiring the award authority to forgo deductions in the event that the sworn reply is ‘late.’” Id. at 7. Thus, Braintree reads the statute to allow it – indeed, perhaps to require it -- to withhold payment from the subcontractor until it receives a response from the contractor and can make deductions based on that response.[4]
            Braintree’s statutory interpretation wholly ignores the timing requirements of Section 39F(e). The provision provides that “[w]ithin fifteen days after receipt of the demand by the awarding authority, . . . the awarding authority shall make direct payment to the subcontractor . . .” M.G.L. c. 30, § 39F(e) (emphasis added). The statute makes no exception for when the general contractor fails to respond to the demand. Pioneer Steel Erectors, Inc., 344 Mass. at 198 (noting that the language in 39F creates a mandatory obligation on the part of the awarding authority, not a “suggestion of good practice”). Thus, as the federal district court noted in Groveland Mun. Light Dep’t v. Philadelphia Indem. Ins. Co., 496 F. Supp. 3d 582, 588–589 (D. Mass. 2020), “If the general contractor does not dispute these claims in a sworn reply within ten days, the owner must pay these demands within fifteen days, less any amounts retained by the owner to complete unsatisfactory or incomplete work or barred by court order” (emphasis added). Indeed, if Braintree’s interpretation were correct, a town could withhold payment to the subcontractor indefinitely, perhaps forever, while it waited for the general contractor to respond to the subcontractor’s demand for payment under Section 39F.  This is hardly consistent with the
 
-------------------------------------
 
[4] Braintree also refers to the legislative history of Section 39F in its argument.  See Braintree’s Opposition at 8.  I am permitted to look at the legislative history when interpreting a statute “[t]o the extent there is any ambiguity in the statutory language.” Ajemian v. Yahoo!, Inc., 478 Mass. 169, 182 (2017). There is no ambiguity in the statutory language of M.G.L. c. 30, § 39F(d) and (e), and therefore I need not consider the legislative history of the statute.
 
                                                            -7-
 
legislative intent that the statute “ensure prompt payment to subcontractors on public works projects,” as Justice Lowy, then a Superior Court judge, put it in E. Amanti & Sons, Inc., 14 Mass. L. Rptr. at 4.
            Braintree also argues that it complied with its obligation under the statute to “make a direct payment to the subcontractor of the balance due under the subcontract” by ultimately paying Harold Brothers the undisputed amount under the subcontract while placing the disputed amount in a joint interest-bearing account (albeit on May 28, 2021 and not May 5, 2021). But the statute does not contemplate this course of action, at least where, as here, the contractor has not raised a dispute within the period allowed by the statute. As noted, an integral part of the statute is the timing for a response to a direct payment. The timing, in part, achieves the statutory purpose of ensuring that subcontractors receive prompt payment on public works projects. See E. Amanti & Sons, Inc., 14 Mass. L. Rptr. at 4. There are no material facts in dispute regarding whether Braintree complied with the timing requirements in M.G.L. c. 30, § 39F. It is evident from the text of the pleadings that it did not.
            Neither M.G.L. c. 30, § 39F nor my decision here prevent Braintree or Shawmut from litigating over the disputed amount with Harold Brothers, or each other, in a different lawsuit. But M.G.L. c. 30, § 39F contemplates that, in the undisputed circumstances set forth in the pleadings here, Harold Brothers is entitled to be paid the entire amount named in its demand while these parties litigate elsewhere, if they choose to, the fate of the disputed amount.
CONCLUSION AND ORDER
 
                                                            -8-
 
For these reasons, Harold Brothers’ motion for judgment on the pleadings is
ALLOWED.
 
@/s/Paul D. Wilson Justice of the Superior Court
 
@December 16, 2021
 
                                                            -9-
 
xxz